Dureee, Judge,
delivered the opinion of the court:
Plaintiff was employed at the Letterkenny Ordnance Depot, Chambersburg, Pennsylvania, as a traveling electronic repairer at Nike missile bases. He had the security clearance required for this work and his efficiency ratings were always satisfactory from 1948 until 1959 when he was removed from. Government Service.
In notifying plaintiff of his removal, the Depot Commander stated (finding 12):. .
* * * ’phg generai charge is Unsuitability because of Immoral Conduct. This is of two kinds; sexual misconduct and untruthfulness. With reference to the sexual aspect, your confession which was given in considerable detail was corroborated by a lie detector test and was not given under duress or undue pressure. If the confession is deemed truthful, as we consider it, then your sworn statement denying the confession constitutes moral turpitude and further supports separation action. If the sworn statement denying the confession is, as you claim, truthful, then you have shown yourself to be entirely unsuitable as an employee since you voluntarily made derogatory statements about yourself and other persons which had no basis in fact. * * *
On appeal by plaintiff, his removal was upheld by the Regional Director of the Civil Service Commission, whose decision was affirmed by the Board of Appeals and Review of the Commission.
*154 At the trial before a Commissioner of this court plaintiff and a Miss Jane Doe[1] both denied having had abnormal sexual relations with one another, and plaintiff denied having had such relations with anyone. The sole evidence of such relations was plaintiff’s sworn statement of March 5, 1959 given to Mr. Denaker, an investigator for the Depot, and his sworn statement of March 17, 1959, given to Denaker and Lt. Col. Morgan, the Provost Marshal, both of which statements he repudiated under oath on March 20, 1959.
There is sharp conflict between the testimony of the two Government investigators and that of plaintiff Scott as to the circumstances under which the two statements Were signed by Scott. The investigators testified that the statements were given voluntarily and without any duress or compulsion. The Trial Commissioner evidently did not credit their testimony, because he found that plaintiff signed the alleged confessions because of undue pressure or because of plaintiff’s service-connected disability.
Plaintiff’s disability was deafness, incurred from a mine explosion in Germany during his combat service in World War II. Even with a hearing aid, he had difficulty in understanding the interrogation. The questions were dictated by the investigators, one of whom admitted he assisted plaintiff from time to time in finding the right words for the answers. There is evidence that the interrogators shouted at plaintiff throughout the interrogation over a total period of four days. By tins time, it is reasonable to conclude that as a result of plaintiff’s disability, he did not fully appreciate what he was signing.
This is particularly true under the methods of the investigators, by which plaintiff’s signature to the purported confession was procured.
Denaker admitted that he interrogated plaintiff for eleven hours relative to sexual relations with Jane Doe. This was on four different occasions, twice at Fort Devens, Massachusetts, and later on two successive days at Letterkenny Ordnance Depot. Defendant admits that the first interro *155 gation at Letterkenny lasted for three hours in the morning, and two hours in the afternoon, and on the next day for three and one-half hours in the morning. Plaintiff signed his statement at 3:30 p.m. in the afternoon of the second day. The last one was in the presence of Denaker and Lt. Col. Morgan, the Provost Marshal, both of them interrogating plaintiff.
Denaker first interrogated plaintiff relative to charges the Depot had in contemplation against Miss Doe; there was no intimation that charges against plaintiff were contemplated, although plaintiff was advised prior to the first interview of his rights against self-incrimination.
No counsel was provided plaintiff, although he says he asked to have one. Denaker and Lt. Col. Morgan denied plaintiff had asked for counsel, but the Trial Commissioner did not credit their statements, as we note more fully further on.
At the conclusion of the first interview at Fort Devens, plaintiff was asked if he would submit to a lie detector test. He agreed, and the test was taken the next day. At the conclusion of it the examiner told plaintiff it showed that plaintiff had lied in his first statement to Denaker, in which he had denied abnormal sexual relations with Jane Doe. However, we do not accept this five-minute lie detector examination, taken under the adverse circumstances to which we later refer, as evidence against plaintiff in this case.
The next day Denaker interrogated plaintiff again and this time plaintiff admitted having had abnormal sexual relations . with Jane Doe. This was on March 5, 1959. Later, he was interrogated by Denaker and Lt. Col. Morgan, the Provost Marshal, on March 16 and 17. In his sworn statement of March 17 he again admitted abnormal sexual relations with Jane Doe. Both the March 5 and March 17 statements were repudiated by him under oath on March 20, 1959. In this sworn statement he said, in part:
* * * all statements made and signed against myself and Miss [Jane Doe] are false.. These statements were made under extreme mental pressure, false allegations, and threats of perjury; that I am a disabled veteran and that my nervous set up is such that I cannot stand long interrogations and prolonged pressures; * * *
*156 Thus, plaintiff has been found guilty of the charge of abnormal sexual relations with Jane Doe solely on his confessions, given under great pressure, without any corroborating evidence of any real probative value, and in the face of his sworn repudiation of the confessions before the trial and at the trial, and in the face of Jane Doe’s sworn testimony that she had never had abnormal sexual relations with plaintiff.
During a total period of four days, one or both of these investigators was questioning plaintiff in an obvious effort to get him to confess to a heinous criminal offense. During this total period, he was not provided with counsel. He was confronted with the results of an inconclusive lie detector test and threatened with prosecution for perjury. While plaintiff denied any sexual misconduct in the first statement, each statement thereafter became more and more incriminating, until the investigators apparently concluded they had finally accomplished their objective. In summary, plaintiff’s signature to the alleged confession was obtained through a subversion of legally accepted police methods of investigation nlrin to what has sometimes been described as “the third degree.”
The Commissioner saw the witnesses on the stand, he observed their maimer and demeanor, and he is, therefore, in the best position to weigh the credibility of their testimony. Upon review of the record, we adopt his findings which are to the effect that plaintiff either did not know the contents of the statements he signed — because of his disability — or he was induced to sign them due to pressure brought to bear on him too great for him to withstand. As a result, there was insufficient testimony to support the charge that plaintiff had been guilty of abnormal sexual behavior.
The Trial Commissioner concluded:
In either event, it is concluded that the Civilian Personnel Division at Letterkenny Depot, the director of the U.S. Civil Service Commission, Third Region, and the Board of Appeals and Review acted in an arbitrary and capricious manner in removing plaintiff from Let-terkenny for “unsuitability because of immoral conduct.”
*157 We adopt this conclusion.
Having first found plaintiff guilty of sexual misconduct on the basis of an uncorroborated confession obtained under duress and great pressure, the Letterkenny Depot Commander made a second and alternative finding that if 'the sworn statement by plaintiff denying his confession was truthful, he was unsuitable because he had voluntarily made derogatory statements in the confession about himself and other persons which had no basis in fact.
Within three days after plaintiff was forced to sign the alleged confession, he disavowed it under oath because it was obtained “under extreme mental pressure, false allegations, and threats of perjury.” The Army Depot did not find that this repudiation was untruthful misconduct. Instead, the Depot concluded that if this disavowal of the confession was truthful, then plaintiff had voluntarily lied about himself and others in his confession. The Government asserts that plaintiff is thus impaled on the horns of a dilemma. It would appear that defendant is itself impaled on one horn or the other. Defendant must establish either that plaintiff told the truth in his confessions of sexual misconduct, or that he lied. It cannot find that he did both.
These two contradictory determinations by the Depot might have been asserted as alternative charges against plaintiff at the outset of the removal proceedings, but as final findings they are clearly inconsistent and contradictory. Plaintiff cannot be hanged twice with the same rope.
Defendant has also urged that plaintiff’s mis-statements not only disclose untruthfulness, but definite moral weakness. If plaintiff had voluntarily associated his female co-employee with the acts of sexual misconduct alleged in the purported confession, and then voluntarily repudiated such allegations, we would agree. However, plaintiff was not dismissed as a weak character or a bad security risk. He was dismissed for “Immoral Conduct.” Under any generally accepted norms of morality, immorality must be voluntary and willful. We have already determined that plaintiff’s signature to the alleged confession was an involuntary submission to duress *158 and pressure too great for him to withstand. The fact that plaintiff withstood this great pressure and duress over four days of interrogation before he yielded to it by signing the final prepared confession, and the further fact that he promptly thereafter repudiated the confession in a sworn statement could be said to indicate strength rather than weakness of character. His excellent record of combat service during the war, and his satisfactory ratings by the Government over ten years of civilian employment in a position of responsibility requiring security clearance, is certainly not evidence of weak, immoral character, but tends towards an opposite conclusion.
We further conclude that the Civilian Personnel Division at Letterkenny Depot, the Director of the U.S. Civil Service Commission, Third Region, and the Board of Appeals and Review acted in an arbitrary and capricious manner in removing plaintiff from his position for “Unsuitability because of Immoral Conduct,” under the second charge of untruthfulness as specified in the Notice of Removal.
The record establishes that due to the circumstances of plaintiff’s dismissal in 1959, it has been practically impossible for him to find other employment. Even the restoration of his pay will be small restitution by the Government for having branded him for life with this unwarranted stigma, after such long and meritorious service to his country.
Plaintiff is entitled to recover, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38 (c).
Davis, Judge; and Laramore, Judge, concur.

 The fictitious name of Jane Doe is being used in place of the actual name of the employee involved inasmuch as she has been cleared of all charges of improper or immoral conduct.